MUTUAL LIFE INSURANCE COMPANY OF NEW YORK

*v.*

ELLA J. COKEFAIR et al.

L., a judgment creditor of D., an alleged heir of a former owner of lands, in his answer and cross-bill to a bill for foreclosure of a mortgage prior to his judgment, attacked the several conveyances of the premises since D's ownership, on the ground of fraud; he also attacked two subsequent mortgages thereon for fraud. Answers were filed to his cross-bill, and he excepted thereto.—*Held*, that his exceptions were defective in making a general objection to the answers, which were clearly good in part; and also his objection that defendant does not answer according to the best of his information, remembrance and belief in instances where he may not have had actual knowledge was too general; that his own interrogatory, " Whether the statements set forth in the cross-bill are not substantially true, and if not, what part of said statements is true ?" need not be answered.—*Held*, further, that L.'s judgment could not be assailed by a mortgagee who does not claim under or represent D.

Bill to foreclose. On objections to answers to cross-bill and motion to strike out counter cross-bill.

*Mr. E. A. Day*, for Lentilhon & Le Roy.

*Mr. M. T. Rosenberg*, for W. H. Tilton.

*Mr. Craig A. Marsh*, for the Cokefairs and the slate company.

THE CHANCELLOR.

The bill is filed to foreclose a mortgage, dated December 12th, 1870, given upon land in Plainfield by Susan M. Sanger and

her husband, to Lebbeus L. Manning, and by him assigned to the complainant. October 20th, 1873, the Sangers conveyed the property to Diedrich Gerken, who, November 21st, 1874, conveyed it to Henry Gerken, who, on or about the same day, conveyed it to Anna C. H. Gerken, wife of Diedrich Gerken. June 9th, 1877, Diedrich Gerken and his wife conveyed the premises to Stephen H. Butler, who, November 29th, 1879, conveyed them to Deborah Tilton. She, October 27th, 1882, conveyed the property to Ella J. Cokefair, wife of Charles C. Cokefair. December 23d, 1884, the Cokefairs gave a mortgage for $500 upon the property to William H. Tilton, and January 26th, 1885, they gave another mortgage (for $5,000) upon the premises to the Old East Bangor Slate Company. May 16th, 1885, the Cokefairs conveyed the property to the slate company. Deborah Tilton died December 14th, 1882, intestate. Her heirs-at-law (among whom were David Tilton and William H. Tilton) were made parties to the bill in view, it would seem, of some question which might arise as to the validity of the conveyance by her to Mrs. Cokefair. David Tilton's interest in the property, if the property descended from Deborah Tilton, is one-ninth. October 21st, 1882, the defendants, Joseph Lentilhon, J. Rutgers Le Roy and Edward L. Lentilhon (partners under the firm of Lentilhon & Le Roy) recovered a judgment against David Tilton, in the supreme court of this state, for $5,176.05. In their answer to the bill of complaint (they answered by way of cross-bill, attacking all the conveyances from the time when Mrs. Gerken owned the property, as fraudulent as against David Tilton's creditors, and designed to defeat, delay and defraud those creditors), they insist that the property was conveyed to the grantees in those conveyances, in secret trust for David Tilton, who (they alleged) owned it. In like manner and on the same ground of fraud and secret trust for David Tilton, they impeach also the mortgages from the Cokefairs to William H. Tilton and the slate company. They also insist that the deed from Deborah Tilton to Mrs. Cokefair was not delivered in the lifetime of the former. Their cross-bill is exhibited against the Cokefairs and the slate company and William H. Tilton, and the other persons

beside William H. Tilton who are named in the original bill as heirs-at-law of Deborah Tilton. The Cokefairs, the slate company and William H. Tilton, have answered the cross-bill. On the other hand, William H. Tilton has exhibited in his answer a cross-bill against Lentilhon & Le Roy, impeaching their judgment as being void under the act " to prevent gaming." Lentilhon & Le Roy object to the answers to their cross-bill for insufficiency, and move to strike out the cross-bill against them.

The objections to the answer of the Cokefairs are, first, that the Cokefairs fail to answer with sufficient fullness and particularity, and according to the best of their knowledge, information, remembrance and belief, the premises set forth and alleged in the cross-bill.

This objection is too general. It covers the whole answer, and it is surely not well taken as to some parts of the answer.

The second objection is to the answers to some of the interrogatories contained in the cross-bill, viz., Who had possession of the property from the time when it was conveyed to Butler to the death of Deborah Tilton? When, and where, and to whom the deed from Deborah Tilton to Mrs. Cokefair was delivered, who was present at the delivery, and by whom the consideration for that deed was paid? When and where it was made, and who was present when it was made?

The first of this group of objections is not well taken. The conveyance to Deborah Tilton was made November 29th, 1879. She conveyed to Mrs. Cokefair, October 27th, 1882, and died December 14th, 1882. The answer says that the answering defendants do not know who had possession before the conveyance to Deborah Tilton; that they are informed and believe that she had possession of the property, but that the premises were vacant when the Cokefairs began to negotiate for the purchase thereof and when they bought them, but were in the control of an agent of Deborah Tilton during all the time of the negotiation up to the time of the purchase, and that the Cokefairs had possession of them from that time up to the time of the conveyance to the slate company, May 16th, 1885.

The second of the particular objections under consideration is

well taken. The answer is not full enough. The names of the attorneys to whom the deed was delivered should have been given, and it should have been stated at what place the delivery was made. In other respects the answer to the interrogatory is sufficient.

As to the third of this group of objections, the answer is sufficient as to the fact of the payment of the money, and by whom and to whom it was paid, but the inquiry as to who was present when the payments were made is not answered. In this respect the answer is insufficient.

The next objection is that the Cokefairs fail to set forth, with sufficient particularity, the terms of the contract of sale between Deborah Tilton and Charles C. Cokefair for the purchase of the property, including the furniture in the house.

There is no call in the cross-bill, either in its statements or interrogatories, for any answer on that subject.

The objection to the answer of the slate company is that it fails to answer, with sufficient fullness and particularity, the interrogatory as to the consideration of the mortgage from the Cokefairs to the company.

There is no ground for the objection. The answer explicitly states that the consideration was $5,000 worth of slate furnished by the company to Cokefair & Bailey.

As to the objections to the answer of William H. Tilton, the first is the same as the first one made to the answer of the Cokefairs. It has already been dealt with and condemned, and disallowed as being too general.

The second is as follows: that the defendant, in like manner (without sufficient fullness and particularity), fails to answer the following interrogatory of said bill—whether the statements set forth in said bill are not substantially true, and if not, what part of said statements is true?

It is obvious that a defendant cannot be required to answer such an interrogatory.

The third objection is that the answering defendant fails to answer the allegation in the cross-bill that Butler took the title under a secret trust for David Tilton, and for the purpose of

hindering, delaying and defrauding the creditors of the latter; that he has not answered the interrogatories as to who, since Butler took the title, has paid the interest upon the complainant's mortgage; who has been in possession of the property since the death of Deborah Tilton, and what is the value of the premises. This objection is well taken. The answer to the allegation referred to is not sufficient, and no answer is made to either or any of the three interrogatories just mentioned.

The fourth objection is well taken in all its specifications except the last, which is that the answering defendant fails to answer material allegations and prayers of the cross-bill according to the best of his information, remembrance and belief in instances where he may not have had actual knowledge. This specification is too general.

The other specifications are that the answer does not answer fully as to whether the property was not held by Butler and Deborah Tilton in trust for David Tilton; under what arrangement, agreement or understanding, expressed or implied, they held the premises; whether David Tilton was not the actual owner of them while they held the title; what Deborah Tilton's interest in the property really was, and what the consideration of the mortgage to William H. Tilton was; how the mortgage came to be made, and who has paid the interest thereon, and who has received that interest. Also, that the statements and interrogatories in regard to the conveyance to Mrs. Cokefair and the circumstances thereof are not fully answered.

An attempt has been made to answer as to all of those matters, but the answer is not full as to any of them. The parties exhibiting the cross-bill have a right to a full and complete answer.

To consider the objection to the cross-bill exhibited by William H. Tilton against Lentilhon & Le Roy. The attempt is made, by means of that cross-bill, to inquire into the validity of Lentilhon & Le Roy's judgment, which is against David Tilton. It is insisted that it is absolutely null and void because, as alleged, the consideration thereof was money, property and things in action, laid, won or betted, in violation of the "act to prevent gaming." William H. Tilton, in his answer, says that his mort-

gage (in respect of which and of his heirship to Deborah Tilton he is made a party to the suit) is his own property; that the consideration thereof was cash advanced by him to Deborah Tilton for herself and David Tilton; that he does not hold the mortgage under any agreement, expressed or implied, for David Tilton or any other person; that David Tilton has no interest in it in any way and never had any, and that David Tilton has never received any interest thereon, and is not entitled to any, nor to any part of the principal. He insists that the title of the Cokefairs to the mortgaged premises was good when his mortgage was given. He does not, in any way whatever, claim any title, whether by mortgage or otherwise, under David Tilton. He is not invested with David Tilton's rights. He therefore cannot call in question the consideration of the judgment. He is a mere stranger—a mere volunteer. His cross-bill will be stricken out. Lentilhon & Le Roy are entitled to costs of the motions in reference to the answers of the Cokefairs and William H. Tilton. The slate company is entitled to costs of the motion in reference to its answer.